## WATSON vs. WILCOX, imp.

<span style="float:right">39 643<br>75 192</span>

NOTICE OF LIS PENDENS. *(1, 2) When notice not vitiated by needless and erroneous additions.*
SUBROGATION. *(3) Who entitled to be subrogated to rights of mortgagee.*

1. In case of a suit in equity to have certain conveyances held for mortgages only, and certain others held void, notice of *lis pendens* was filed, stating the parties and the nature of the suit, enumerating the several conveyances involved, and describing the land conveyed by each conveyance. *Held,* that if the notice had stopped there, it would have been a sufficient compliance with the statute (R. S., ch. 134, sec. 7).
2. The notice, however, adds a conclusion, stating that "the following real estate is intended to be affected" by the action, and thereupon gives a wrong description, substituting, by a clerical error, the word *north* for *south,* and so describes lands not included in said conveyances. *Held,* that this needless and false conclusion does not vitiate the notice. *Spraggon v. McGreer,* 14 Wis., 439, distinguished.
3. One, who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and canceling the mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee therein.

APPEAL from the Circuit Court for *Rock* County.

The case stated in the complaint is substantially as follows: On June 29, 1864, Allen Bates and the defendant George Harvey were in possession, and the apparent owners of certain lands in Rock county, claiming title to a portion of the same by deed, dated August 4, 1860, from Henry Naiden, who had become the owner of the same by foreclosure of a certain mortgage given by the defendant *Wilcox*, dated April 4, 1857; and to the remainder under a tax deed dated September 13, 1861, and a sheriff's deed dated September 27, 1862, which was executed pursuant to a judgment rendered against *Wilcox* while he was the owner of the land. On said 29th of June, Allen Bates conveyed his interest in said lands to the defendant Harriet Harvey, wife of George Harvey. While in possession of the lands in question, Harvey and wife mortgaged them to Sarah Ann Hodson, April 23, 1866, for $2,500, on which mortgage there was due and unpaid on October 22, 1869, $1,750. At that time, the Harveys being unable to pay the mortgage, Mrs. Hodson applied to the plaintiff to purchase the same, which he agreed to do; and as they were about to make an assignment of the mortgage, it was suggested that it would be better to have the mortgage canceled, and take a new mortgage from the Harveys, which was agreed to, and thereupon the plaintiff paid to Mrs. Hodson, at the request of the Harveys, $1,750, and took a new note and mortgage from the Harveys for that sum, and said mortgage was recorded October 23, 1869, and on the same day Mrs. Hodson satisfied of record the mortgage previously executed to her. On October 12, 1869, the defendant *Wilcox* commenced an action in the Rock county circuit court, against Bates and wife and Harvey and wife, to have the deeds from Henry Naiden and the sheriff of Rock county, and the tax deed, above mentioned, declared mortgages to secure Bates and Harvey for advances made by them, and for an accounting, and to have the deed from Bates and wife to Mrs. Harvey declared a voluntary conveyance and void as against *Wilcox;* and on that day a certain notice of *lis pen-*

*dens* was filed. In said action it was finally adjudged that the title to said lands was in *Wilcox*, and 'that the interest of the Harveys in the premises mortgaged to the plaintiff was a mortgage interest only. It is further alleged that the said deeds were procured to be executed by *Wilcox* for the purpose of hindering his creditors, and that neither the plaintiff nor Mrs. Hodson had any knowledge of the pendency of said action, or that *Wilcox* had any interest in said lands, but when the sum of $1,750 was advanced, and for a long time afterward, the plaintiff supposed that the Harveys were the legal and equitable owners of the same. Prayer, that the mortgage to the plaintiff be held a valid mortgage as against *Wilcox*, or that the release of the Hodson mortgage be canceled, and that the plaintiff be subrogated to all the rights of Mrs. Hodson under that mortgage, and for judgment of foreclosure under her mortgage. The complaint sets out at length the notice of *lis pendens* above mentioned; but its contents sufficiently appear from the opinion. The defendant *Wilcox* demurred to the complaint as not stating a cause of action; the demurrer was sustained; and plaintiff appealed from the judgment entered thereon.

*William Ruger*, for appellant:

1. The *lis pendens* is insufficient to charge the plaintiff with notice. If the conditions upon which the right of recording instruments depends are not strictly complied with, or if the record or filing is defective, the law will not presume notice. *N. Y. Life Ins. Co. v. White*, 17 N. Y., 469; *Pringle v. Dunn*, 37 Wis., 449, 464, 466. The rule that a person having knowledge sufficient to put a prudent man on inquiry, is chargeable with all knowledge to which such inquiry would lead, only applies when the information is actual, and not constructive. Story's Eq. Jur. (Redfield's ed.), § 410 a, 399, note 5; *Ely v. Wilcox*, 20 Wis., 530; *Pringle v. Dunn*, 37 id., 464–6; *Frost v. Beekman*, 1 Johns. Ch., 299–300. In this case the *lis pendens* was defective and misleading, and as

though no notice at all was filed. *Spraggon v. McGreer*, 14 Wis., 439; *Thomson v. Wilcox*, 7 Lans., 376; *Miller v. Sherry*, 2 Wall., 250. Where the notice is not definite and clear, or is conflicting in its statements, it will be construed strictly against the party claiming advantage under it. *Schnee v. Schnee*, 23 Wis., 381–2. *Wilcox* made the conveyance for an unlawful purpose, and it should not be held to be avoided as against the plaintiff on a mere presumption that the latter knew the contents of the defective notice. *Reynolds v. Vilas*, 8 Wis., 481–4, and cases there cited.   2. If the plaintiff failed to acquire a lien upon the land by the mortgage executed to him, the facts stated entitled him to have the discharge of the Hodson mortgage canceled, and to be subrogated to the rights of Mrs. Hodson. *Morgan v. Hammett*, 23 Wis., 30; *Raymond v. Holborn*, id., 57; *Blodgett v. Hitt*, 29 id., 169; *Thorp v. Amos*, 1 Sandf. Ch., 26, 33–4; *McLaughlin v. Daniel*, 8 Dana, 183; *Carpenter v. Ins. Co.*, 16 Pet., 501; *Miller v. Lancaster*, 5 Cold., 522–4; *Towle v. Hoit*, 14 N. H., 61; *Bank v. Dodson*, 9 Smedes & M., 527; 1 Hilliard on Mort., 355, 692; *Ferris v. Crawford*, 2 Denio, 595; *Mount v. Suydam*, 4 Sandf. Ch., 399; *Mathews v. Aiken*, 1 Coms., 595, 599, 601, 604–5; Story's Eq. Jur. (Redfield's ed.), § 567. The plaintiff removed a lien from the land of *Wilcox*, not as a gratuity, but upon the faith of a second mortgage upon the land; and his equities are the same as if he had taken an assignment of the mortgage, and he cannot be held a volunteer in such a sense as to defeat his plain equity. Burrill's Law Dic., "Voluntary;" *Morgan v. Hammett*, 23 Wis., 30; *Raymond v. Holborn*, 23 Wis., 57.

*I. C. Sloan*, for respondent:

1. The notice, in spite of the faulty description in the closing paragraph, is sufficient to put a purchaser upon inquiry, and, hence, is sufficient to charge him with all the knowledge to which such inquiry, if entered upon, would have led. 2 Sugden on Vend., 290; 4 Kent's Com., 179;

*Greene v. Slayter*, 5 Johns. Ch., 38; *Pitney v. Leonard*, 1 Paige, 461; *Pendleton v. Fay*, 2 id., 202; *Hawley v. Cramer*, 4 Cow., 717; *Troup v. Hurlbut*, 10 Barb., 354; *Williamson v. Brown*, 15 N. Y., 354; *Baker v. Bliss*, 39 id., 70; *Howard Insurance Co. v. Halsey*, 4 Sandf., 565; *Parker v. Kane*, 4 Wis., 1; *Lamont v. Stimson*, 5 id., 443; *La Crosse v. Melrose*, 22 id., 459; *Shove v. Larsen*, 22 id., 142; *Fallass v. Pierce*, 30 id., 443; *Peters v. Goodrich*, 3 Conn., 146; *Sigourney v. Munn*, 7 id., 324; *Bolles v. Chauncey*, 8 id., 389; *Booth v. Barnum*, 9 id., 286. 2. The complaint states no facts sufficient to warrant the subrogation asked. It shows that the plaintiff is simply a volunteer, advancing the money as a mere investment. To entitle him to subrogation, it should appear that he had paid the Hodson mortgage as surety, or to protect some interest which he had in the premises. May on Ins., 558; *Gadsden ads. Brown*, Speers' Eq., 37; *Erb's Appeal*, 2 Penn., 296; *Goswiler's Estate*, 3 id., 200; *McGinnis's Appeal*, 16 Pa. St., 445; *Lloyd v. Galbraith*, 32 id., 103; *Richmond v. Marston*, 15 Ind., 134; *Downer v. Miller*, 15 Wis., 612; *Sanford v. McLean*, 3 Paige, 117; *Marvin v. Vedder*, 5 Cow., 671; *Banta v. Garmo*, 1 Sandf. Ch., 383.

RYAN, C. J. This appeal involves two distinct questions:

I. The sufficiency of the *lis pendens* in the action brought by the respondent against Bates and others.

That was a suit in equity, seeking to have certain conveyances held for mortgages only, and certain other conveyances held to be void. Notice of the pendency of the action was filed, stating the nature of the suit, enumerating the several conveyances involved, and describing the land conveyed by each conveyance. We cannot doubt, and we do not understand it to be seriously questioned, that if the notice had there stopped, it would have been a sufficient compliance with the statute. Ch. 134, sec. 7, R. S. For it gave, in very intelligible form, the names of the parties, the object of the

action, and a description of the property affected by it. But the notice proceeds, by way of supererogation, to add a conclusion undertaking to describe, what had already appeared, the property to be affected by the action, and giving a wrong description. By what is obviously a clerical error, this description twice substitutes the word *north* for *south*, and so describes other land not included in the conveyances in question. And the only question on the sufficiency of the *lis pendens* is, whether this needless and false conclusion vitiates the whole notice.

We cannot think that it does. The statute charges every subsequent purchaser with constructive notice of the whole paper filed, which gives notice of the property affected by its true description. The constructive notice of the statute is equivalent to actual notice by reading the *lis pendens* filed. Any person of reasonable intelligence, reading it, would perceive the error. And the appellant, as others interested in the title, appears to be chargeable with knowledge that the true description of the property is in the statement of the conveyances, because they are in his chain of title. *Pringle v. Dunn*, 37 Wis., 449, and cases there cited. Were that otherwise, the notice is sufficient as to both descriptions, the true and the false. The false description is mere surplusage; and *utile per inutile non vitiatur*. See *Thompson v. Jones*, 4 Wis., 106; *Jarvis v. McBride*, 18 id., 316; *Dupont v. Davis*, 30 id., 170. All that the statute requires is in the notice, independently of this superfluity, which serves only to add notice of a falshood to notice of the truth.

This case is quite distinguishable from *Spraggon v. Mc-Greer*, 14 Wis., 439, and *Miller v. Sherry*, 2 Wall., 237, cited for the appellant. In the first of these cases, the notice of *lis pendens* contained no correct description of the premises in controversy; and in the second, the creditor's bill, which was relied on for notice, described no specific realty whatever. It is also distinguishable from *Thomson v. Wilcox*, 7 Lans., 376,

in which there was a single misdescription by metes and bounds coupled with the correct street number. There the one description was inconsistent with itself, the principal description being bad and the incident good. This is essentially different from two descriptions of different parcels, both certain in themselves. In the case in Lansing there was a failure of correct description of any land; in this, there is a correct and independent description of the land in controversy, and also a correct and independent description of other land not in controversy, inserted by mistake: a mere surplusage.

Of course, the merits of the case in which the *lis pendens* was filed, are not before us here. And, for the reasons stated, we hold the *lis pendens* sufficient to charge the appellant with notice.

II. The claim of the appellant to be subrogated to Sarah Ann Hodson, mortgagee of the premises in controversy under George and Harriet Harvey; that is, to have his mortgage subrogated to hers.

Before the appellant took his own mortgage from George and Harriet Harvey, he was a stranger to the title, and had no connection with the mortgage debt due to Sarah Ann Hodson. His action in the premises was voluntary. He first proposed to purchase the Hodson mortgage, but subsequently abandoned that intention and advanced the amount due upon it for the Harveys, for the express purpose of satisfying and canceling the Hodson mortgage. This was done; the appellant thereupon taking a new mortgage for his own security. It is difficult to see how the doctrine of subrogation can aid him.

The rule is thus stated by WALWORTH, C.: "It is only in cases where the person advancing money to pay the debt of a third party, stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course,

without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished." *Sandford v. McLean*, 3 Paige, 117.

The same rule is sanctioned by this court in *Downer v. Miller*, 15 Wis., 612. Mr. Justice PAINE there remarks: "If Miller had simply loaned his credit to Steever to enable him to raise the money with which to pay the Lyness judgment, Miller being in no way bound to pay it, either as security or otherwise, this alone would not have entitled him to be subrogated to the rights of Lyness. We know of no case that has ever carried the doctrine of subrogation so far as to hold that a mere loan of money, for the purpose of enabling the borrower to pay a debt, entitles the lender to be subrogated to the rights of the creditor whose debt was thus paid." And *Pelton v. Knapp*, 21 Wis., 63, appears to proceed upon the same principle. See also *Marvin v. Vedder*, 5 Cow., 671; *Richmond v. Marston*, 15 Ind., 134; and the English and American notes to *Aldrich v. Cooper*, Hare & Wallace's edition of White & Tudor's Leading Cases, *passim*. And we see nothing in conflict with the rule in the cases in this court, *Morgan v. Hammett*, 23 Wis., 30; *Raymond v. Holborn*, id., 57; *Blodgett v. Hitt*, 29 id., 169, and *Winslow v. Crowell*, 35 id., 639, cited for the appellant.

*Banta v. Garmo*, 1 Sandf. Ch., 383, was a case like this, where money was advanced by the junior mortgagee to pay the prior mortgage, which was thereupon satisfied; although in that case the satisfaction piece was not recorded. The Vice Chancellor followed *Sandford v. McLean*; remarking of the junior mortgagee's claim of subrogation, that " if the question were open, I should at once say that the evils which would flow from the adoption of such a principle, would far overbalance the hardship of particular cases which occur under the rule of law as now settled."

It is therefore impossible to uphold the appellant's claim to be subrogated to the rights of Sarah Ann Hodson, or to revive her mortgage purposely extinguished by his own voluntary act.

The demurrer to the complaint was properly sustained, and the judgment of the court below must be affirmed.

*By the Court.*— Judgment affirmed.